92   245
167  213

THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

EDGAR P. KELLAM.

NEGLIGENCE—*not slackening speed of train.* Where an engine-driver sees, or can see in time to slacken the speed of his train, a lot of cattle crossing the railroad track upon a highway, but does not stop the train or slacken its speed, and

kills an animal which has escaped from the owner's inclosure, this will show negligence on his part of a high degree, and the railroad company will be liable for the value of the animal so killed. Such a case is not like the cases where the cattle were quietly grazing alongside the track when discovered.

APPEAL from the Circuit Court of Jersey county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. WARREN & POGUE, for the appellant.

Mr. J. H. YAGER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This suit was brought by Edgar P. Kellam against the Chicago and Alton Railroad Company, to recover the value of a cow killed on defendant's road. As the cow was killed on a public road crossing, it is not claimed defendant is liable for the loss sustained unless the killing was negligently or wilfully done. There is no pretence it was wilfully done, so the case is narrowed to the single issue whether the servants of defendant in charge were guilty of negligence in the management of the train that did the injury.

It is insisted this case is controlled by the cases in this court, that declare an engine-driver is not bound to stop his train or even slacken the speed when stock is discovered quietly grazing near the track, or to stop his train on every slight apprehension of danger. *Peoria, Pekin and Jacksonville Railroad Co.* v. *Champ*, 75 Ill. 577; *Chicago, Burlington and Quincy Railroad Co.* v. *Bradfield*, 63 id. 220. But the facts in the case at bar are so unlike the facts in the cases cited, the principle declared can have no application. In both cases cited the animals killed were seen grazing near the railroad on the commons, and they were not seen approaching the track until it was too late to stop the train in time to avoid the danger. It was very properly held, it could not be anticipated the animals would suddenly come upon the track, and for that reason the law had not imposed the obligation to slacken the speed of the train. In such cases it was thought

neither the safety of the citizen nor the protection of property required the adoption of any such regulation.

But that is not the case here. The animal killed was not feeding on any commons. The herd with which it had been pastured escaped from the inclosure without any fault on the part of the owner, so far as this record discloses, and was next seen on the highway. Exactly what number composed the herd was either not known or was not accurately stated, as the witnesses differ materially as to the number. At all events the number was great enough to attract attention. Parties residing in the vicinity of the crossing where the cow was killed, and who saw the killing, all concur in saying the cattle were traveling in a line across the railroad track on the public road, and all the herd had passed over except the cow belonging to plaintiff, as the express train was seen approaching from the north. She was a heavy animal, and moved, it is said, rather slower than the others composing the herd. Whether she stopped west of the crossing after the other cattle had gone over, and was standing still when first discovered by the engine-driver, the evidence is conflicting. There is testimony, and it is the most reasonable account given, that she was following slowly after the others and had not stopped at all. There is not a particle of evidence that she was "quietly grazing" near the track or that there was anything to graze upon in the highway.

Assuming it to be true, as we must do from the finding of the jury, that the herd, including plaintiff's cow, was moving in a line across the railroad track, following closely one after another, it was the plain duty of the engine-driver to have slackened the speed of the train that he might be able to avoid destruction of property; and the only question that can arise in the case is, whether the omission to perform that duty can be attributed to defendant as negligence. There was certainly nothing to obstruct the view, and it is no doubt true the engine-driver saw the cattle following each other in a line as they passed over the highway crossing of the track, and he

ought, at least, to have slackened the speed of the train so as to have given him the control of it when it became apparent the herd might not all get over before his train would reach the crossing. A part of the herd had passed over the track, and it would be the most natural conclusion the others would follow immediately rather than go in another direction when alarmed by the sound of the whistle. It seems to us no one could reasonably anticipate anything else. It was an unusual thing to see cattle on the highway at that hour of the morning without a herdsman, and that fact itself ought to have arrested the attention of the engine-driver and enjoined upon him a high degree of care. It was unlike the discovery of stock grazing quietly on the commons near the track, and under the circumstances it was negligence of a high degree not to slacken the speed of the train. It was running at the rate of thirty miles an hour. The result that followed ought to have been anticipated, and it seems little less than recklessness in the engine-driver not to heed the danger that was so imminent.

Only two instructions were given for plaintiff. The principle announced in the one to which objections are taken is precisely the same and is expressed in almost the exact language as the one approved by this court in *Toledo, Peoria and Warsaw Railway Co.* v. *Bray*, 57 Ill. 514. According to the decision in that case, the instruction given states a correct principle of law, and as it was applicable to the facts of the case, it was proper it should be given. It would have been useless to add to the instruction as given the qualification insisted upon, the engine-driver was not bound to stop his train when stock was discovered "grazing near the railroad," or upon "every vague apprehension of danger," as the evidence would not warrant that view of the case, and the tendency would have been to mislead the jury on the issues involved, by directing their attention to a hypothetical case not made by the evidence.

The modification made to defendant's instruction was proper and, indeed, necessary in view of the facts of the case.

As modified the instruction states the law liberally for defendant's theory of the case, quite as much so as it could ask or expect. All that was contained in defendant's refused instructions that was proper to be given was contained in others that were given, and the court was not bound to give it a second time.

The animal killed was a very valuable one, and according to the evidence, and certainly after the *remittitur* was entered, the damages found are not excessive.

The judgment must be affirmed.

*Judgment affirmed.*